398 So.2d 902 (1981)
Ethel LAKE, Appellant,
v.
IRWIN YACHT & MARINE CORP., and Underwriters Adjusting Co., Appellees.
No. TT-478.
District Court of Appeal of Florida, First District.
May 4, 1981.
Rehearing Denied June 2, 1981.
Julian M. Piper of Goldner, Reams, Marger, Davis, Piper & Kiernan, St. Petersburg, for appellant.
Kurt Preston Hampt of Jacobs, Robbins & Gaynor, St. Petersburg, for appellees.
ERVIN, Judge.
Ethel Lake, the claimant below, appeals a workers' compensation order which denied her benefits under either an exposure or occupational disease theory for a chronic bronchitis condition that she had allegedly incurred by inhaling toxic fumes during the course of her employment. In rejecting claimant's occupational disease theory, the deputy commissioner observed that the claimant had failed to meet the requirements established by Norman v. Morrison Food Services, 245 So.2d 234 (Fla. 1971), and Harris v. Josephs of Greater Miami, Inc., 122 So.2d 561 (Fla. 1960). As to the exposure theory, he relied upon Host International, Inc. v. Fornos, IRC Order 2-3595 (November 15, 1978), and concluded that *903 there was insufficient evidence in the record to establish that claimant's excessive exposure was the direct cause of her injury, and that the exposure subjected the claimant to more than the hazards confronting people generally. He also concluded that there was insufficient evidence both as to the length and nature of the exposure. Although we differ with the deputy commissioner's application of the law in rejecting the claimant's occupational disease theory, we concur with his ultimate conclusion on that point. However, we hold that the claimant has adequately proven an industrial exposure theory of recovery in accordance with the recently announced standards in Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1980). Therefore, we reverse as to that theory.
The claimant was employed by Irwin Yacht and Marine Corporation, one of the appellees herein, beginning in 1967. She had never experienced any difficulty in breathing prior to this employment. During the course of her employment with Irwin Yacht, she performed a variety of tasks associated with building yachts, including cutting fiberglass and cleaning boats. Her employment duties caused her to be exposed to fumes from teak oil and acetone, as well as fiberglass dust. During July and August of 1977, she began having difficulty breathing, and then sought medical treatment. She was referred to Dr. Rosenburg, a specialist in internal medicine. He suggested that claimant refrain from working in the boat building business. The claimant complied with the doctor's instructions, but she continued to have lung-related problems such as heaviness of the chest and coughing up blood, which required her commitment to a hospital. During her hospitalization, Dr. Garby, a thoracic surgeon, performed a bronchoscopic examination on the claimant and took tissue samples as well as sputum cultures upon which medical tests were performed. In summary, these tests only established that claimant was suffering from bronchitis. They did not establish the cause of the bronchitis.
Dr. Garby testified that there was no known medical test which would positively identify chemically induced bronchitis. Dr. Rosenburg testified that a challenge test[1] could identify whether a specific chemical was the cause of bronchitis, but apparently felt that such a test was not advisable. Even in the absence of such a test, it was Dr. Garby's opinion, based upon claimant's history, that claimant's chemical exposure was the most likely cause of her bronchitis. Dr. Rosenburg, relying on claimant's history, and the fact that claimant had completely recovered from her condition after permanently leaving the employ of Irwin Yacht, gave comparable testimony, additionally stating that the acetone chemicals and the use of fiberglass with paint chemicals are not commonly found in the environment but are more likely found with shipbuilders. Another physician, Dr. McDonell, testified that the chemicals the claimant was exposed to would have caused irritation to almost anyone at the concentrations at which she was exposed.
Significantly, there was no medical evidence that claimant's exposure to chemicals was not causally related to her bronchitis. The record did indicate that a staph bacteria was isolated in a sputum culture taken from the claimant. However, the medical testimony in the record clearly indicated that a bacterial infection was not the cause of claimant's bronchitis.
There is a great deal of overlap between the exposure and occupational disease theories in the instant case. Yet, as the holding in this case indicates, there are important distinctions between the two. As to exposure, in Festa v. Teleflex, supra, we established a three pronged test: (1) The claimant must have had a prolonged exposure; (2) a causal relationship must be established between the exposure and the injury or aggravation; and (3) claimant must establish that he or she has been subject *904 to a hazard greater than that to which the general public is exposed. We have also recently announced in Broward Industrial Plating, Inc. v. Weiby, 394 So.2d 1117 (Fla. 1st DCA 1981), a four-factor test that must be proven by the claimant before he or she can recover for an occupational disease:
(1) the disease must be actually caused by employment conditions that are characteristic of and peculiar to a particular occupation;
(2) the disease must be actually contracted during employment in the particular occupation;
(3) the occupation must present a particular hazard of the disease occurring so as to distinguish that occupation from usual occupations, or the incidence of the disease must be substantially higher in the occupation than in usual occupations; and
(4) if the disease is an ordinary disease of life, the incidence of such a disease must be substantially higher in the particular occupation than in the general public.
(See p. 1119).
Both tests share a common element of causation. Because of this commonality, Norman v. Morrison Food Services, infra, and Harris v. Josephs of Greater Miami, Inc., infra, are instructive as to either theory of recovery.
In Norman v. Morrison Food Services, 245 So.2d 234, 236 (Fla. 1971), the court quoted with approval the following language in Harris v. Josephs of Greater Miami, 122 So.2d 561, 562 (Fla. 1960):

In cases involving diseases or physical defects of an employee as distinguished from external occurrence to an employee such as an automobile accident claimant must prove a causal connection other than by merely showing that it is logical that the injury arose out of claimant's employment or that by a "preponderance of probabilities" it appears that it arose out of such employment. There must be some clear evidence rather than speculation or conjecture establishing a causal connection between a claimant's injury and her employment. (emphasis in original)
Both Harris and Norman involved claims for contact dermatitis due to an exposure to chemicals at work. In each case the claims were denied because a causal connection had not been established. In Harris, medical patch tests were conducted which determined that claimant's injuries were not work-related but were attributable to another cause. One physician, without conducting any tests and without knowledge as to any particular dye or chemical the plaintiff had been exposed, opined that the disease possibly or probably was caused by dyes or some other substance in her work. In Norman, the medical reports introduced into evidence were all unfavorable to the claimant's contention that her condition was work-related. There, however, the court allowed the claimant a second chance on remand to produce further evidence to establish that her contact dermatitis resulted from chemicals used in her employment. The evidence required of plaintiff was the identification of the chemicals to which she was exposed as well as exposure.[2]
Both Harris and Norman are distinguishable from the instant case, however. Here the medical tests conducted  unlike those in Harris and Norman  did not reveal that the claimant's condition was either caused or not caused by the conditions of her employment. Nevertheless, both Dr. Garby and Dr. Rosenburg testified that claimant's illness was probably caused by her exposure to chemicals at work. The appellee contends that a medical opinion based solely on claimant's history is not enough to establish a causal connection between her work exposure and illness. The medical testimony here, however, substantially differs from that in Harris which referred to the seminal case of Arkin Construction Co. v. Simpkins, *905 99 So.2d 557, 561 (Fla. 1957), for the following proposition:
It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value.
In Harris, the doctor did not have any knowledge as to the type of dyes or chemicals that the claimant was exposed to. Here, in contrast, Dr. Rosenburg was aware that the claimant was exposed to acetone and teak finish as well as fiberglass dust. The claimant also testified at the hearing as to these facts. Dr. Rosenburg also partially based his opinion on claimant's favorable response to his recommended therapy that the claimant stay away from boat cleaning. Dr. Garby based his opinion on claimant's history and medical studies which have shown that exposure to fiberglass dust can cause bronchitis. Both doctors' opinions were based on a reasonable medical probability. The deputy commissioner offered no reason why he rejected their testimony. Cf. Cohen-Ager, Inc. v. Pierce, IRC Order 2-3173 (June 2, 1977). The Harris court made it clear that a medical opinion based upon reasonable medical certainty is sufficient to establish a causal connection.
We adopt the reasoning in Platz v. North Electric Company, IRC Order 4-3165 (May 23, 1977), cert. den., 358 So.2d 132 (Fla. 1978), which did not interpret Norman as requiring a specific chemical test to establish causation. In Platz, a physician testified that there was no objective test that could specifically establish which, if any, of the chemicals the claimant was exposed to were the exact cause of claimant's illness. The IRC panel, nevertheless, concluded that the doctor's conclusion, in reply to a hypothetical question involving the details of the claimant's exposure and the doctor's own independent research, were reached by competent, subjective and deductive diagnosis, and were sufficient to establish a causal relationship. And so we also conclude here.
The claimant has also proven the remaining elements in the exposure test. She established the prolonged nature of her exposure through her own testimony and through the testimony of Dr. McDonell. Dr. Rosenburg gave unrefuted testimony that acetone chemicals and the use of fiberglass with paint chemicals are not commonly found in the environment but are more likely to be found with shipbuilders. Through this evidence, the claimant has established that she has been subjected to a hazard greater than that which the general public is normally exposed.
She has not, however, satisfied the remainder of the occupational disease test by merely establishing a greater degree of exposure, vis-a-vis the public at large. See Broward Industrial Plating, Inc. v. Weiby, supra (at p. 1119). She must also demonstrate her "occupation presents a particular hazard of the disease occurring so as to distinguish [her] occupation from usual occupations, or that the incidence of the disease is substantially higher in [her] occupation than in usual occupations." Id. at p. 1119. Here, the claimant presented no such evidence.
Nevertheless, because the claimant has established her exposure theory of recovery, the order denying her claim is reversed and it is remanded for further proceedings consistent with this opinion.
SHAW, J., concurs.
WENTWORTH, J., concurring specially.
WENTWORTH, Judge, concurring specially:
I concur in the majority opinion insofar as it concludes that claimant has established the compensability of her bronchitis by an "exposure" theory of recovery. However, since claimant has prevailed on the exposure theory, it is not necessary to address (and I would not determine) the question of sufficiency of evidence for an "occupational disease" theory of recovery in this case.
NOTES
[1] A challenge test involves an intentional exposure of a patient to a specific chemical. The patient is then observed for symptoms of an illness that the chemical is expected to produce.
[2] The Norman court also seems to suggest that a chemical test may have been determinative in identifying the chemicals.